**PEITZMAN et al. v. CITY OF ILLMO.**

No. 12696.

Circuit Court of Appeals, Eighth Circuit.

April 17, 1944.

Rehearing Denied May 6, 1944.

Jacob M. Lashly, of St. Louis, Mo. (R. Wallace Karraker, of Jonesboro, Ill., Rush H. Limbaugh, of Cape Girardeau, Mo., and Whitworth Stokes, of Nashville, Tenn., on the brief), for appellants.

J. Grant Frye, of Cape Girardeau, Mo., for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment in favor of the City of Illmo, which was plaintiff in the trial court. The nature of the cause of action alleged is one of the controversies on this appeal, it being claimed by appellants that the action was on contract, while the appellee contends that it sounded in tort. We shall refer to the parties as they were designated in the trial court.

Plaintiff is a municipal corporation located in Scott County, Missouri. On July 7, 1941, it entered into a written contract with the U. S. Elevated Tank Maintenance Company, by which the latter agreed to do certain work on the city's elevated steel water tank. The nature of the work to be performed on this tank is described in the written contract as follows: (1) "to mechanically scale, brush, clean, wash and test tank for public safety, and paint inside two (2) coats of U. S. Asphalt Tank Reliner" at a cost of $185; (2) "to remove all loose paint and rust scale from outside of tank, tower, riserpipe, everything from ground up, and given two (2) coats of One Coat Red Lead and one coat Aluminum paint" at a cost of $290; (3) "to furnish labor to remove and replace all loose and defective rivets and weld all pits regardless of size, also tighten and adjust all rods to put tank in first class condition at Two Dollars per hour per man and to furnish compressor at Two Dollars and Fifty Cents per hour and arc welder at Two Dollars and Fifty Cents per hour for all work other than the above described, also to furnish rivets at 10¢ per pound and electrode welding rods at 35¢ per pound."

Following the signing of the contract, a crew of eight or ten men arrived in Illmo with a large tractor-trailer equipped with air-hammers, compressors and other machinery and tools. The water tank was drained and work commenced by this crew. City officials, discovering that rivets were being removed from the tank, ordered the work stopped, and on July 22, 1941, this action was commenced in the Circuit Court of Scott County, Missouri, aided by an attachment of property. The U. S. Elevated Tank Maintenance Company was named as the sole defendant, and it was alleged that it was a foreign corporation. On July 23, 1941, however, plaintiff amended its complaint so as to allege that E. H. Peitzman and William Peitzman did business under the name of U. S. Elevated Maintenance Company, and these individuals were named as defendants. Plaintiff gave notice for the taking of depositions of certain witnesses in the office of Fred M. Craig, Secretary of the Scott County Building and Loan Association, at Illmo, on the 26th day of July, 1941, at ten a. m. At that time the depositions of several employees of defendants, who had been working on the job, were taken, as was also the deposition of defendant William Peitzman, he and his wife, E. H. Peitzman, having in the meantime by amendment to the pleadings been named as defendants. Defendants removed the cause to the United States District Court.

On August 2, 1941, by amendment, the allegations of the original bill were amplified and exemplary as well as actual damages were claimed. This amended complaint set forth the written contract in substance and alleged that an agent of defendants had inspected the tank about the time

of the execution of the contract and that the agent stated to plaintiff's officials that the tank and standpipe were in good condition and did not need any rivets, except a few in the standpipe, and that the total expense to the city, including the cost of cleaning and painting, would not exceed $600. Unskillfulness in the performance of certain of the work is alleged, and paragraphs 11, 12, 14 and 17, containing allegations which are here material, read as follows:

"11. That purporting to act under said written agreement, the defendants, through the said B. R. Hinchman and their other aide employees, and in furtherance of a scheme to defraud plaintiff, unnecessarily removed several hundred large rivets from the floor of said tank and other parts thereof, and in the process of removing same, due to carelessness and lack of skill of their employees, tore the holes where said rivets had been, made them oval shaped instead of circular so that new rivets placed therein would not fit tightly; that the rivets removed were in good condition and did not need to be removed, and removal thereof was not within the agreement or contemplation of the parties, but was done maliciously and with the fraudulent intent of defendants and under their direction, of running up an excessive charge against plaintiff thereof all to the great damage of said tank and stand pipe and injury to plaintiff.

"12. That in removing such rivets, the edges of the steel plates were kinked, warped, twisted, and damaged so that upon replacing new rivets therein, the steel plates will not fit together so as to be water-tight, and the rivet holes will be so enlarged, torn, and lacking in roundness so that the riveting will not hold the plates securely nor can water leakage be reasonably prevented without great cost to plaintiff to repair and replace same."

"14. That the defendants through their agents and employees, wantonly and maliciously took out great numbers of rivets and tore apart sections of said tank and stand pipe, all of which were in good condition and were unnecessary to be removed, and fraudulently and maliciously run up a labor account, which they purported to charge against this plaintiff, in the sum of several hundred dollars and as a part of their scheme to defraud plaintiff, demanded that plaintiff approve and pay the same."

"17. That on account of the wrongful acts and conduct of the defendant, their agents, and employees, plaintiff's tank and stand pipe have been greatly damaged by the carelessness and lack of skill of defendants' employees and the willful, malicious, and fraudulent acts and conduct of defendants and their agents and servants in doing the work on said tank and stand pipe and by the wrongful, fraudulent and malicious taking out of rivets which did not need to be taken out, and by the kinking and warping, marring, scarring, and tearing said steel, and by their failure to clean and paint said tank and stand pipe, and on the further account of the fact that plaintiff has been required, from the time defendants undertook said work, to procure at great expense, water for its citizens from the City of Fornfelt; that on account of the breach of said agreement by the defendants and on account of the wrongful malicious and fraudulent acts and conduct aforesaid, and on account of the damages and injury to plaintiff's property, plaintiff has been actually damaged in the sum of $5,000.00."

At the trial on the question of damages, at which defendants and their counsel were present and offered testimony on that issue, on motion of plaintiff the claim for exemplary damages purports to have been increased from $10,000 to $20,000.

Defendants filed separate answers to the amended complaint, the defendant E. H. Peitzman denying generally the allegations of the complaint and alleging that she was the sole owner of the U. S. Elevated Tank Maintenance Company. She also interposed two counterclaims, in the first of which she sought to recover from plaintiff $918.50 as the value of the work done on the tank up to the time of being stopped. By the second counterclaim she claimed $20,000 actual and exemplary damages for libel, alleging that plaintiff, through its authorized agents, attorneys and representatives, without just cause or excuse and for the purpose of maliciously harming, damaging, intimidating, injuring and defaming her, on various and diverse occasions had wilfully, wantonly, and maliciously conveyed false statements and accusations to numerous third parties, falsely charging her with dishonesty and incompetency, and falsely accusing her of operating under various assumed names, and falsely charging and accusing her of having changed her name, all with the

wilful and malicious intent to damage, harm, slander, defame and intimidate her. The counterclaim sets forth certain specific "words and items of correspondence," and then alleges that as a direct result of such defamatory words and statements she was injured to her damage in the amount of $20,000. Plaintiff replied, denying the allegations of both counterclaims, and as to the alleged libelous words pleaded truth and justification.

On October 7, 1942, plaintiff filed a motion based on Rule 37(d) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to strike the answers and counterclaims because of the alleged failure of defendants to appear at the taking of depositions duly noticed, refusal to testify, avoidance of process, and the obstruction of plaintiff in procuring evidence. After hearing the motion was sustained and default of the defendants was entered. The case was set down for hearing before a jury on the question of damages. At the trial of this issue, on which both parties submitted evidence, the jury returned a verdict for plaintiff in the sum of $4,000 as actual damages, and $10,000 as punitive damages. From the judgment entered on this verdict, defendants prosecute this appeal. Their contentions as disclosed by their brief are substantially as follows: (1) The court erred in striking the answers of the defendants; (2) the court erred in permitting amendments of the petition; (3) punitive damages were not recoverable because the action is on contract; (4) evidence of other contracts and what was done under them was improperly admitted; (5) the verdict is excessive in amount. We shall first consider the action of the court in striking defendants' answers.

Rule 37(d) of the Rules of Civil Procedure is as follows:

"If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answers to interrogatories submitted under Rule 33, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."

No interrogatories were served under Rule 33. As to the taking of the deposition of a party, Rule 37 prescribes the remedy where a party, if an individual, fails to appear before the officer who is to take his deposition, after the giving of proper notice. While considerable discussion is devoted by counsel to the taking of the depositions at Illmo, and also to the conduct of the defendant William Peitzman, we are of the view that this should not be considered on the question of the propriety of striking the answers of defendants, except possibly to the extent that it may show defendants' attitude, because the complaint had just been amended so as to name them as defendants. The defendant E. H. Peitzman was not present and the cause had not been removed to the United States District Court. Neither shall we consider the failure of the defendants to appear at the taking of the depositions noted to be taken on October 23, 1941, at Memphis, Tennessee. The cause was then pending in the State court, not yet having been removed to the Federal court. After the removal, plaintiff served a notice on the attorney for defendants to take the depositions of various named and unnamed witnesses at Memphis, Tennessee, on April 10, 1942. The notice complied with the provisions of Rule 30(a). Included among the witnesses named were the two defendants. Defendant E. H. Peitzman filed a motion to restrain plaintiff from taking the depositions. This the court denied. Notwithstanding this ruling of the court, defendants did not appear at the taking of the depositions. Another notice was served, noting the taking of depositions at Memphis, Tennessee, on May 28, 1942, in which notice defendants were named as witnesses. Defendants again failed to appear. They had themselves noted the taking of the depositions of certain witnesses in Memphis, Tennessee, on the preceding day, at which time they were present. These refusals and failures to appear were, we think, sufficient to warrant the trial court in its action in striking defendants' answers. Service of the notice upon the attorney for defendants was all that was required to make it incumbent upon the parties to appear. Spaeth v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y., 1 F.R.D. 729, 730. In Spaeth v. Warner Bros. Pictures, Inc., supra, District Judge Hulbert, in the course of his opinion, says:

"It is not necessary to serve a subpoena on a party. A remedy upon his failure to appear, is a motion to strike out his pleading. Rule 37(d)."

■ Defendants urge that the order in fact punishes them for contempt of court, but there is a distinction between striking a pleading as punishment for contempt of court and striking it for violation of a rule of procedure. Hammond Packing Co. v. State of Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530, 15 Ann.Cas. 645. Rule 37(d) recognizes this distinction and provides that parties to an action who wilfully fail to attend and submit to examination on proper notice to take their depositions, become subject to the exercise of the power vested in the trial court to strike their pleadings and to enter judgment by default.

■■ Defendants further urge that the notices to take depositions were improper because witnesses other than themselves were not subpoenaed, nor was provision made for prepayment of fees and expenses for the attendance of the witnesses named, nor was the production of documents required by subpoenas duces tecum. Reference is made to rule 30(d), which requires the clerk upon proof of service of notice to take deposition to issue subpoenas within his district. Rule 45(c) provides that service of a subpoena is to be made by delivering a copy and a tender of fees for one day's attendance and the mileage allowed by law. These, however, were not matters of concern to the defendants. The notice requiring them to appear was in proper form. The requirement for the production of documents by the defendants did not invalidate the notice, but if defendants considered it too broad they had a right to proceed under Rule 30(b) to limit the examination. If there were any errors or irregularities in the notice, they were waived by failing to serve written objections on the party giving the notice as provided in Rule 32(a). We conclude that the trial court, in striking defendants' answers, did not exceed its power nor abuse its discretion under Rule 37(d).

■ It is urged by defendants that punitive damages were not recoverable because the cause of action sued upon was on contract. In Missouri the principle is recognized that where a covenant creates a duty, failure to perform that duty is the basis for an action in tort. Graff v. Lemp Brewing Co., 130 Mo.App. 618, 109 S.W. 1044. A tort is a wrong done independent of contract, but torts may be committed in the non-observance of contract duties.

Braun v. Riel, Mo.Sup., 40 S.W.2d 621, 80 A.L.R. 875. Liability in tort may indeed co-exist with a liability in contract toward the same person where, independently of the contract, there is a duty which has been violated. Rosenthal & Doucette, Inc., v. United Last Co., D.C.Mass., 33 F.Supp. 213. Conduct that is merely a breach of contract is, of course, not a tort. However, a contract may establish a relationship and failure to exercise proper care or tortious and intentional wrong in performing it may give rise to a tort liability which is not defeated because there was a contract. Reference in a pleading to a contract in such a case is to aid in understanding the relation of the parties to each other. Actual negligence or misfeasance may be the basis of the action notwithstanding the existence of a contract. Attleboro Mfg. Co. v. Frankfort Marine, etc., Ins. Co., 1 Cir., 240 F. 573; Blackshear Mfg. Co. v. Umatilla Fruit Co., 5 Cir., 48 F.2d 174.

■ A consideration of plaintiff's complaint as amended convinces that plaintiff intended to state its action in tort and not on contract. The action in tort is maintainable on the theory that the contract was not entered into in good faith or that performance was not begun nor carried on in an attempt to comply with the contract. It will be observed that plaintiff alleges in substance that defendants were not in good faith carrying out performance of a contract to restore and preserve the structure but were instead using it as a means of gaining access to the property, when, as wreckers and destroyers, they intentionally injured and damaged plaintiff's property. If a tailor, instead of working on the repair of a garment left with him for repair, should use his scissors to cut the garment into shreds, the customer certainly could sue in tort notwithstanding the contract relations of the parties. The question of the nature of the action pleaded is, of course, important because of its bearing on the right to recover exemplary damages. At the commencement of the hearing on the question of damages, plaintiff was permitted to amend its complaint by striking the following words, "on account of the breach of said agreement by defendant," which appear in paragraph 17 of the amended complaint. If this in fact changed the action from one in contract to one in tort, or otherwise substantially affected what is alleged in the complaint, defendants could

*not* have been in default. Rule 5(a), Rules of Civil Procedure. But early in the course of the litigation plaintiff had amended its petition to ask for exemplary damages. Such damages are not recoverable in an action on contract, except in cases not here material. Norris v. Letchworth, 167 Mo.App. 553, 152 S.W. 421. In case of doubt as to the nature of the cause of action, the prayer of the complaint may be looked to, and where the damages sought, whether exemplary or punitive, are inconsistent with an action for damages on breach of contract, but are consistent with an action sounding in tort and the complaint otherwise may sustain such construction, it will be considered that plaintiff intended to sue in tort. Thuringer v. Bonner, 74 Colo. 539, 222 P. 1118; Thompson v. Strauss, 29 Hun, N.Y., 256; Whilden v. Merchants' & Planters' Nat. Bank, 64 Ala. 1, 38 Am.Rep. 1. Here we think the amendment did not change the, nature of the cause of action and could not have surprised defendants. It was made when the parties were before the court and was allowed by the court in its discretion. Of controlling importance in allowing or denying amendments not allowable as of course, is the question of whether the party has been prejudiced, or whether the allowance of the amendment has worked an injustice.

The other amendment concerns the amount of damages prayed for. In this connection it should be observed that the record is in a confused condition; it in fact presents a paradox. The petition as served in the state court asked for $5,000 compensatory damages. The first amended petition, filed August 2, 1941, while the case was still in the state court, shows that the prayer for compensatory damages was in the sum of $5,000 and for punitive damages in the sum of $20,000. On October 7, 1942, the record indicates, plaintiff gave notice of motion to amend the prayer of the petition by interlineation, by increasing the amount of punitive damages from $1,000 to $10,000, which motion was granted October 12, 1942. In fact, instead of increasing the amount of the claim for punitive damages from $1,000 to $10,000, by this amendment the amount of the claim for punitive damages was decreased from $20,000 to $10,000. At the time of the trial plaintiff moved to amend the complaint "in the actual damages up to $5,000.00, and to amend the amount of

punitive damages to $20,000.00." In this state of the record it is doubtful whether the prayer for punitive damages was in fact increased in amount. Rule 54(c) provides in part as follows: "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Rule 55(b) makes provision for a hearing on the question of the amount of damages where defendant has appeared in the action. Rule 54 (c) apparently is a general rule applicable in case of a non-appearing defendant in complete default. On a hearing on the question of damages, under Rule 55(b) a defendant, though in default, is in court on a hearing limited to the question of the amount of damages, to the same extent that he is in court in a trial on the merits, and we think amendments at the trial are as appropriate in the one case as in the other. Amendments to a pleading may be allowed at the hearing on damages as to the relief prayed, subject to the right of the defendant, if taken by surprise or put to a disadvantage, to ask for a continuance or for time in which to prepare to meet the enlarged claim. See Rule 5(a); La Barre v. City of Waterbury, 69 Conn. 554, 37 A. 1068. In general, it may be said that a change in the amount prayed for is not of vital importance, as the prayer for relief is in fact no part of the claim or cause of action stated.

Having held that this was a tort action, exemplary damages were allowable and might be allowed · by the jury if the wrongdoer must have known that his act was wrong and was done to inflict injury, or if done under such circumstances that the law will imply evil intent. Ferguson v. Missouri Pac. Ry. Co., Mo.Sup., 177 S. W. 616.

Defendants urge that the court improperly admitted evidence of other transactions in other cities where they did similar repair work and in which plaintiff contends they followed a system of wrongdoing, much the same as that at Illmo. Rule 10 of this Court, provides, among other things, that: "If the appellant or petitioner in his brief challenges rulings upon evidence, such evidence, the objections interposed thereto, and the rulings questioned shall be quoted in the printed record, * * *." Rule 11 provides among other things, as follows: "If an error assigned or point relied upon relates to the admission or exclusion of evidence, the

statement shall quote the evidence referred to and the pertinent objections or exceptions taken, together with the rulings of the court thereon, giving the pages of the printed record on which the quotations appear." These rules have not been complied with. However, we are of the view that while such evidence would not be admissible to prove the cause of action, it was admissible in proof of circumstances to be considered by the jury in determining the intention or motive of defendants in the particular acts for which punitive damages were claimed. Westbrook v. Jefferies, 173 S.C. 178, 175 S.E. 433.

■■■■ Although defendants moved for a directed verdict in their favor at the close of all the testimony, they have not assigned as error ·the ruling of the court denying their motion, thus raising a question of law in this court, but instead they contend that the judgment should be reversed because the damages allowed by the jury were excessive. This question is not for the consideration of this court. On appeal we are inhibited from reversing "for error in ruling any plea in abatement, other than a plea to the jurisdiction of the court, or for any error in fact." Title 28 U.S.C.A. § 879. Amendment VII of the Constitution provides that, " * * * no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of thei common law." The amount of the damages was a question of fact for the jury. The contention that the verdict was excessive will not be considered on review. It can only be cured by motion for a new trial. In Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F.2d 700, 705, 92 A. L.R. 1166, we were asked to reverse on the ground that the verdict was excessive. In the course of the opinion it is there said:

"It would seem to be unnecessary to consider the question that the judgment should be reversed because the verdict is excessive. This is a question addressed to the discretion of the trial court, and this court is without authority to review the amount of the verdict in a tort action. (Citing many authorities)." ,

■■■■ There is excepted from this rule a verdict rendered excessive through appeals to passion and prejudice. Kurn v. Stanfield, 8 Cir., 111 F.2d 469. Defendants here contend that passion and prejudice taint the verdict because of the introduction of the evidence of similar transactions. We have, however, already held that such evidence was admissible and hence, this contention is without merit. The weight to be given such testimony in assessing damages was for the jury.

Many pages of the defendants' original brief are devoted to criticism of conduct of opposing counsel, while a still greater portion of plaintiff's answering brief is devoted to the question of so-called personal privilege and the making of accusations of misconduct on the part of counsel for defendants. As reversal was not sought on the ground of such misconduct, these portions of the briefs have been of no assistance to the court, and litigants should not be called upon to bear the expense of printing briefs simply reflecting the views of their counsel with reference to the conduct of opposing counsel. The question has nothing to do with our decision of the issues in this case, but as it is so vigorously and intemperately urged by counsel on either side, and counsel seem to expect that we should place our stamp of approval or disapproval on the corduct of respective counsel, we feel that we should perhaps not pass the question without comment. The record in this case illustrates what ought not to be done in a lawsuit. The conduct of counsel on either side is not free from criticism and for the most part occurred outside of the presence of the court in the course of taking depositions so that it could not be controlled by the trial court. Here we must point out that Mr. Lashly, who argued this case on behalf of the defendants, had nothing to do with the trial of the case nor the preparation of the record, nor the preparation of any of the briefs except the reply brief, and it must be understood that what we say in no manner reflects upon his conduct. The reply brief in fact might well be studied by Mr. Lashly's associates and by opposing counsel as a model to be emulated. It appears also that other counsel in addition to those appearing in this court representing defendants participated in the trial of the case and the taking of depositions, and his conduct is seriously criticized by counsel for plaintiff. We are not passing upon the charges or countercharges that have been hurled by counsel for the respective sides at each other, but we think it proper in this connection to

call attention to some of the canons of professional ethics. Canon 17 reads in part as follows:

"Clients, not lawyers, are the litigants. Whatever may be the ill-feeling existing between clients, it should not be allowed to influence counsel in their conduct and demeanor toward each other or toward suitors in the case. All personalities between counsel should be scrupulously avoided. * * *."

Canon 19 reads as follows:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

Canon 20 reads as follows:

"Newspaper publications by a lawyer as to pending or anticipated litigation may interfere with a fair trial in the Courts and otherwise prejudice the due administration of justice. Generally they are to be condemned. If the extreme circumstances of a particular case justify a statement to the public, it is unprofessional to make it anonymously. An ex parte reference to the facts should not go beyond quotation from the records and papers on file in the court; but even in extreme cases it is better to avoid any ex parte statement."

Counsel on either side have in this case violated Canon 17. The record also discloses that counsel on one side was a witness in behalf of his client as to matters not merely formal. Counsel on either side have gone outside of the record to show that the facts and issues in this litigation when it was pending on appeal to this court have been the subject of ex parte references and public addresses. After the appeal to this court had been perfected, one of the counsel delivered at least three public addresses graphically if not dramatically portraying his version of the proceedings, and caused one of his addresses to be published in the official publication of the American Water Works Association. Had the appeal been successful, a retrial of the issues by the trial court would have been necessary, and hence, the case was still pending at the time of these addresses and the publication mentioned. We can not extend our approval to the conduct of counsel on either side, which they have impliedly, if not directly, solicited from us.

There has been called to our attention a motion to tax costs filed by appellee on the day of the argument, which, however, was not presented at the time of the argument. We have therefore given the motion no consideration, but if desirable it may be urged hereafter.

The judgment appealed from is affirmed.