300 F.2d 400
 T. Y. FONG, individually and trading as Asia Developing Corporation and as Hong Kong Shipping Corporation, Limited, Appellant,
v.
UNITED STATES of America, Appellee.
UNITED STATES of America, Appellant,
v.
T. Y. FONG, individually and trading as Asia Development Corporation and as Hong Kong Shipping Corporation, Limited, Appellee.
 No. 16594.
 United States Court of Appeals Ninth Circuit.
 February 10, 1962.
 
 Brookhart, Becker & Dorsey, Smith W. Brookhart, Benjamin H. Dorsey, F. Murray Callahan, Washington, D. C., (Robert J. Drewes, Brobeck, Phleger & Harrison, San Francisco, Cal., of counsel), for appellant, T. Y. Fong.
 George Cochran Doub, Asst. Atty. Gen., Lynn J. Gillard, U. S. Atty., San Francisco, Cal., Morton Hollander, Herbert E. Morris, Attys., Dept. of Justice, Washington, D. C., for appellant U. S.
 Before CHAMBERS and HAMLEY, Circuit Judges, and BOWEN, District Judge.
 BOWEN, District Judge.
 This appeal brings before us issues of fact and law related to a certain ship sales and scrapping contract of February 2, 1948 between plaintiff's agent, the United States Maritime Commission, and the defendant, T. Y. Fong, involving 15 of the plaintiff's immobilized merchant vessels lying in Subic Bay in the Philippines on the date of the contract. Herein the parties will be called plaintiff and defendant, respectively, as they were in the Trial Court.
 The United States of America as plaintiff brought this action by the filing of its original complaint in the Trial Court on December 31, 1956, and later filed an amended complaint.
 Plaintiff's amended complaint alleging violations of law and of contract set out four separate counts or causes of action: (1) for violation of the False Claims Act (31 U.S.C.A. §§ 231, 232), (2) for violation of the Surplus Property Act of 1944 (58 Stat. 765; 50 U.S.C.App.1946 ed. § 1611 et seq.[1]), (3) for conversion of the vessels, and (4) for breach of contract of February 2, 1948. That amended complaint followed defendant Fong's motion to dismiss plaintiff's original complaint based on only the substance of the foregoing first count of plaintiff's amended complaint. Fong renewed his motion to dismiss as against the first count of the amended complaint, and after the Trial Court postponed ruling on his motion and required his answer, defendant Fong answered with denials and alleged affirmative defenses against the several counts of the amended complaint.
 Immediately upon filing the original complaint for only alleged violation of the False Claims Act, plaintiff on December 31, 1956 caused the defendant to be arrested and held to bail as provided in the Act upon the ground that defendant, a non-resident, was temporarily in this country and planned to flee the United States. Defendant on January 2, 1957 posted a $50,000.00 bond as required by the Court conditioned that he would appear at all depositions, hearings and proceedings as ordered by the Court, that he would remain within stated court jurisdictions including that of the Trial Court unless permitted by court order to leave, and that the bond would be security for defendant's obligation to pay "any judgment, including interest and costs, which may be entered against me and in favor of the United States", and that the court-deposited security for the bond "is to be applied to payment of any such judgment, interest and costs".
 No further court action occurred until June 3, 1957 when defendant filed his motion to dismiss plaintiff's original complaint. Hearing on that motion was set for July 1, 1957, but by stipulation of the parties the hearing was continued to July 15, 1957. However, on July 11, 1957, plaintiff filed the amended complaint above mentioned. The next day, July 12th, defendant filed his motion to dismiss the first count or cause of action of the amended complaint. This motion was heard on July 18, 1957, when the Trial Court required the filing of briefs, ordered defendant to answer the other counts by August 2, 1957, and continued the further hearing on the motion to August 13, 1957 when it was finally submitted for decision. On December 4, 1957, the Court stating its reasons in a written decision reserved ruling on the dismissal motion until the trial. Some of the reasons and conclusions stated in that decision are in substance now set forth here.
 Count one of the amended complaint alleges that defendant violated the False Claims Act, 31 U.S.C.A. § 231, and plaintiff asks for the money relief in forfeitures and double damages provided by the statute.
 The False Claims Act provides that "Any person * * * who shall make or cause to be made, * * * for payment or approval, * * * any claim upon or against the Government of the United States, * * * knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, * * * any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement * * * shall forfeit and pay to the United States * * *" $2000 and double the amount of damages resulting to the United States from the doing of such act.
 As facts constituting a violation of the False Claims Act, plaintiff alleges that 15 of its immobilized vessels in Subic Bay, Philippine Islands were advertised for sale to be scrapped, and that defendant purchased those vessels by the contract dated February 2, 1948 for $271,000.00, and in the contract agreed to scrap five of the vessels by March 3, 1950 and each of the ten remaining vessels at one month intervals thereafter. The defendant by letter of May 2, 1951, several months after the agreed date for scrapping the last one of the vessels, requested a time extension for scrapping three of the vessels on which he stated scrapping had not then commenced, but stated further that of the other twelve vessels three had been completely scrapped, the scrapping was progressing on seven, that two had apparently been lost at sea, and that he had not parted with ownership of any of the vessels.
 Plaintiff, however, alleges that as to the seven vessels on which defendant stated scrapping had begun, although defendant after May 2, 1951 presented certificates of the scrapping completion of four of them by March 16, 1951 and of three of them by May 16, 1951, those vessels were not scrapped by the time of the certified dates, even though they were ultimately scrapped. Plaintiff contends that the allegedly false statements in defendant's May 2, 1951 letter and in the scrapping certificates were for the purpose of obtaining approval of defendant's implied claim of right to retain title to the vessels in opposition to the contractual right of the United States to require reconveyance of the vessels for defendant's breach of the sales and scrapping contract conditions. Plaintiff urges that by those allegedly false statements defendant intended to conceal his breaches of the contract conditions entitling plaintiff to such reconveyance, and that the false statements were in effect made to obtain approval of a claim against the United States.
 The Trial Court thought that what plaintiff thus contends to be a "claim against the United States" was not an ordinary one of that kind, that whether it is in fact such a claim as that dealt with in the False Claims Act was left doubtful when judged from the pleadings alone, and that appraisal evidence of the rights and duties of the parties under the sales and scrapping contract and of their dealings with each other subsequent to making the contract was needed to throw light on the nature of plaintiff's contentions, that the trial on the three other counts of the amended complaint would require most of the evidence material to the first count under the False Claims Act, and that under those circumstances, the Court should and did reserve ruling on defendant's motion to dismiss the first count until the trial. The Trial Court properly exercised its discretion in so reserving its decision. Rule 12(d), F.R. Civ.P., 28 U.S.C.A.; Montgomery Ward & Co. v. Schumacher, 3 F.R.D. 368; Blue Mountain Const. R. Co. v. Werner, 270 F. 2d 305 (9 Cir.); United States v. Central States Theatre Corp., D.C., 159 F.Supp. 552.
 In its order for judgment filed December 30, 1958, after the trial on the merits, the Trial Court again and finally ruled respecting defendant's motion to dismiss count one that "The Government has conceded that it may not have a multiple recovery of damages under more than one count of the complaint, and seeks only an alternative judgment under each of the four counts. In the opinion of the Court, there is grave doubt that counts one, two and three state a claim on which relief can be granted. Under the circumstances, it is proper that damages be awarded only upon plaintiff's claim for breach of contract." That is what the Court did. It did not allow to plaintiff any relief whatsoever respecting counts one, two and three. In that connection in a footnote to its order for judgment the Court stated that "The posture that this cause has now assumed upon the entry of defendant's default has made it unnecessary to rule on the motion to dismiss", and the Court never did. The mere fact that the bond with its security was filed as an incident to the count one proceedings did not deprive the Court of its authority to reserve ruling on the motion to dismiss that count. If it had that authority, as it did in this case, it also had the authority to retain its power over the bond and its security until the motion to dismiss was disposed of. There was no error in the Court's reserving its decision until the trial nor in its failure to ultimately rule on defendant's motion to dismiss count one.
 The most important issue in this case is whether the answer-striking and default order against defendant was proper. In the course of pre-trial proceedings, the Court ordered that defendant's answer be stricken and entered default against defendant, as to which the pertinent facts are as follows:
 Pursuant to notice given on July 11, 1957, defendant's deposition upon oral interrogatories was begun on July 19, 1957, but on July 23, 1957, not being then completed, it was by agreement of the parties recessed, to be resumed on ten days notice.
 Defendant failed to personally appear and show cause as ordered at a hearing on September 30, 1957 why the security for his January 2, 1957 appearance and judgment-payment bond should not be adequately increased and why he should not be recommitted and held in custody until he posted such increased bond, but his attorney in a written return to the show cause order informed the Court that the defendant had filed the United States, and that his attorney had without success tried as the Court directed to send copies of the show cause order to the defendant by mail addressed to him in care of relatives or friends at places in the United States and Canada. In that return defendant's attorney further said that "It appears that the defendant has breached the conditions of the bond which require him to remain within certain enumerated judicial districts within the United States and to appear before this Court in accordance with all notices and orders of this Court. Under present circumstances, it would appear obvious that defendant will not and cannot be compelled to deposit any additional security and that therefore, plaintiff is asking the Court to do a meaningless act when it asks that the bond be increased." The Court did not increase the bond or its security.
 Plaintiff gave notice to the defendant's counsel that the defendant's deposition would be resumed on February 17, 1958. The defendant did not then appear, and the Court continued such deposition taking to February 27, 1958, but the defendant did not personally appear as required on the latter date, nor did he personally ever appear on any other date subsequent to July 23, 1957.
 On February 26, 1958, defendant's counsel notified plaintiff's counsel that defendant would on February 27, 1958, move for a protective order directing that the further deposition of defendant be taken on written interrogatories, attaching to the motion a copy of a cable from defendant then at Santiago, Chile, to his attorneys in Washington, D. C. informing them that he would answer written interrogatories in Montevideo, Uruguay, where he would be staying at the Victoria Plaza Hotel, and also attaching to that motion a statement of defendant's San Francisco doctor to the effect that the doctor had treated defendant as his patient from June 17 to July 11, 1957 for a peptic ulcer and infectious hepatitis and had advised for defendant a program of rest. Obviously the Trial Court was convinced beyond any doubt from defendant's cable and other circumstances in the case that he had received the information as to the resumption of his deposition, was willfully refusing to appear for that purpose, was willfully absent from the district of the forum in violation of his appearance bond and the Court's order, and was while in willful disobedience of the notice and the Court's orders making a presumptuous suggestion of substituting written interrogatories in South America for oral interrogation at San Francisco. The Trial Court denied that motion, and we agree with and approve such denial.
 The plaintiff on March 7, 1958 gave notice that it would on March 13, 1958 pursuant to Rule 37(d) F.R.Civ.P. move for an order striking the defendant's answer in the case and for an order of default against the defendant, accompanying the motion with the supporting affidavits of James B. Schnake and Katherine H. Johnson, two of plaintiff's attorneys, and the affidavit of Culver E. Gidden, disclosing to the Court that the defendant Fong had left the United States between August 17 and 20, 1957 from a place near Boston, Massachusetts, and had traveled by air to Europe via Montreal, Canada, that on the 26th day of November, 1957, the date of Mr. Gidden's affidavit, the defendant Fong was to have been in Paris, France, and that his wife in Sao Paulo, Brazil, then expected him to arrive there soon.
 The defendant's counsel, Smith W. Brookhart, stated in his own affidavit that on the night of March 10, 1958 when Mr. Fong was in Buenos Aires, Argentina, affiant had a telephone conversation with the defendant Fong and reminded him that plaintiff's motion for default judgment would be heard by the Court on March 13, 1958, and that there was nothing before the Court to show that his absence from the resumption of his deposition was not willful, and that the defendant then stated his fear that if he returned to the United States he would be rearrested and a larger bond would be exacted from him with the possibility of his having to remain in jail in the United States; that defendant requested the affiant, his attorney, to come to Buenos Aires as soon as possible to go over developments in his case which affiant agreed to do but had not on the date of the affidavit done.
 From the foregoing and other record information before it, the Court, on March 13, 1958, found that the deposition of defendant when recessed on July 23, 1957 to be resumed on ten days notice was not then completed; that defendant's attorneys were served on January 11, 1958 with notice of the resumption of defendant's deposition upon oral interrogatories commencing February 17, 1958 at a specified address in San Francisco; that defendant did not appear at that time and place, but that defendant's attorney was then present in open court when the Court continued the resumption of defendant's deposition from February 17 to February 27, 1958; and that defendant after having been served with proper notice willfully failed to appear before the officer who was to take his resumed deposition upon the latter date at the appointed time and place.
 The Court, in view of those facts and pursuant to Rule 37(d), F.R.Civ.P., ordered that defendant's answer to the amended complaint be stricken from the record in the case, and entered default against the defendant on March 13, 1958 (filed March 14, 1958), reserving to defendant the right to move "upon a proper showing" for the vacation of the default. In that order the Court further directed that the trial limited to the issue of damages be set for May 26, 1958, but apparently due to the interposition of pretrial motions the Court later continued the trial to June 9, 1958 and again to July 7, 1958, at which time both parties were privileged to offer evidence on that issue.
 On April 22, 1958, defendant gave notice that he would move to vacate and set aside the default and the answer-striking order, pursuant to Rule 55(c), F.R.Civ.P., for reasons set out in a number of affidavits including those stating the need for surgical and medical treatment of defendant in South America and reiterating defendant's fear of further proceedings in San Francisco and his counterproposal that his deposition be resumed and taken in South America at his expense. This motion heard on April 28, 1958 was denied without prejudice to the right of defendant to renew the motion "if defendant returns to the United States of America and makes himself available for depositions within 30 days", but he never did that.
 On June 25, 1958, defendant moved for reconsideration of his motion to vacate the default, and again that motion to vacate default was heard and denied on July 2, 1958.
 Thereafter the case proceeded to trial on July 7 and 8, 1958 before the Court without a jury upon only the issue of damages. Counsel for both parties were present and participated in the trial proceedings. Plaintiff submitted as evidence the well pleaded facts alleged in plaintiff's amended complaint and also additional evidence and exhibits. On July 8, 1958 the reception of evidence was completed and the Court then ordered the filing of briefs by counsel and continued the case to September 9, 1958 for submission, when it was finally submitted for the Court's decision.
 Having heard and considered the plaintiff's well pleaded facts (in view of defendant's default and the striking of his answer), the additional evidence and exhibits and the briefs and arguments of counsel, the Court on December 30, 1958 entered its order for judgment for plaintiff on only the fourth cause of action of plaintiff's amended complaint in the sums of $516,000.00 liquidated damages and $511,000.00 actual damages, total $1,027,000.00. No recovery was allowed on the first, second and third causes of action of plaintiff's amended complaint because plaintiff, the Court ruled, had disavowed its intention of multiple recovery upon the several counts, but had pleaded them only in the alternative, and the Court doubted that either of the first, second and third counts stated a cause of action.
 On February 11, 1959, the Court's findings, conclusions and judgment for plaintiff for the above stated amounts, and for plaintiff's costs of $340.40, were entered.
 Defendant timely moved for a new trial and for an order setting aside the default and reinstating defendant's answer, and in the alternative for correction of the judgment to eliminate recovery of actual damages because plaintiff had not before the default prayed for actual damages in the fourth count on which the Court had granted recovery for such actual damages.
 The Court denied the motion to set aside the answer-striking and default order, and denied the motion for new trial, but, ruling that the award of actual damages to plaintiff on its fourth count in which it did not before the default demand actual damages was prohibited by Rule 54(c), F.R.Civ.P., the Court by its order of June 3, 1959 ordered "that its judgment of February 11, 1959 be amended to delete the award of actual damages unless plaintiff within 30 days consents to vacation of the default, in which case defendant's default shall be vacated." That left the award of liquidated damages stand unless the plaintiff accepted the condition that the default be vacated, which condition plaintiff by written statement filed in the case July 2, 1959 expressly refused to accept.
 Meantime, pursuant to the Trial Court's order of February 25, 1959 (by a Judge other than the Trial Judge), plaintiff had had execution against defendant's $50,000 appearance bond and its security, and a like sum realized from that execution had been paid to the Treasurer of the United States in partial satisfaction of the judgment.
 Both of the parties now appeal to this Court from those parts of the judgment and orders of the Trial Court adverse to them respectively. The Trial Court under Sections 231 and 232 of Title 31 U.S. C.A., Section 1345 of Title 28 U.S.C., and Section 1635 of Title 50, U.S.C.App.1946 ed.[2] had, and this Court under Section 1291 of Title 28 U.S.C. has, jurisdiction.
 On his appeal defendant assigns six errors as follows: 1. Trial Court's refusal ever to rule on defendant's motion to dismiss the First Count was prejudicial error, because authority to arrest and continue holding defendant to bail existed solely by virtue of First Count.
 2. Court abused its discretion in denying the motions to vacate default because of the allegedly uncontradicted showing that defendant's absence was not willful, defendant offered to comply with further discovery procedures within his physical limitations at his expense, and such action would not prejudice or inconvenience plaintiff.
 3. The Court erred in holding defendant personally liable for liquidated damages solely in consequence of the default despite his claimed complete legal defense, and because of plaintiff's failure to prove alter ego relationship between defendant Fong and Asia Development Corporation and Hong Kong Shipping Corporation, Limited.
 4. The Court abused its discretion in denying defendant's motion to vacate the judgment by default and for a new trial, because of plaintiff's waiver of damages, defendant's meritorious defense, and the final willingness of defendant to comply with court discovery procedures, and further because, considering the large sums involved and defendant's unfamiliarity with American legal procedures, the equities and furtherance of justice warranted a trial on the merits.
 
 
 1
 5. Plaintiff is precluded from appealing the Trial Court's deletion from the judgment of award of actual damages to plaintiff because plaintiff refused to accept Court's offer to allow plaintiff to prove actual damages and because plaintiff waived its claim to such damages.
 
 
 2
 6. Ex parte execution on defendant's bond was wrongfully obtained by misrepresentation of plaintiff's counsel.
 
 
 3
 In view of what we have already said above, defendant's first assignment of error is rejected.
 
 
 4
 We now consider defendant's second and fourth assignments of error respecting the Trial Court's order striking his answer and entering his default. The prominent pertinent facts are related above. After plaintiff had moved to resume defendant's deposition, defendant made a motion (denied by the Court) for a protective order that his further deposition be taken upon written interrogatories, attaching to his motion his own cable (dated February 25, 1958, two days before scheduled resumption of his deposition) from Santiago, Chile, and attaching his San Francisco doctor's affidavit that he had treated defendant in June and July, 1957 for peptic ulcer and infectious hepatitis and had prescribed for him a program of rest and recommended his activities be confined to his home as far as possible. That was the first time defendant had mentioned his bad health problems to the Court.
 
 
 5
 At several pre-trial appearances in the Trial Court, defendant's attorneys emphasized his asserted bad health and his unfamiliarity with and fear of past and prospective American court proceedings in his case, and thereby tried to show that his absence from the scheduled resumption of his deposition and from the hearing on plaintiff's motion for an order striking defendant's answer and entering his default was not willful and was justified. The Court, however, was rightly unimpressed by that showing including his own and his doctors' statements as to his health. It is very significant that in defendant's cable of February 25, 1958, two days before the hearing on his motion for protective order, he did not say he was sick in Chile where he then was, nor that he would be in bad health in Uruguay where he would be before the end of that February. He did not at any time explain or attempt to explain the nature or extent of his activities during his Canadian, European and South American trips. Neither did he at any time say why his health would not for so long a time permit his return to San Francisco for further proceedings in his case at the very time when he was able enough to and did go on a foreign trip of about seven months duration. Right up to only a few days immediately before entry of the default he was not too sick to personally continue his both-sides-of-the-world business or other activities.
 
 
 6
 Upon the whole record, and because of defendant's obvious disregard of the Court's notices and orders, his extensive foreign travels and his conduct in fleeing the United States and in unjustifiably failing and refusing to return for more than seven months before entry of the answer-striking and default order pursuant to plaintiff's motion hearing attended and participated in by defendant's attorneys after notice to them, the Court found that defendant willfully failed, after proper notice, to appear for the resumption of his uncompleted deposition. Accordingly, the Court entered the answer-striking and default order against defendant without prejudice to his right to later move "upon a proper showing" for the vacation of the default order.
 
 
 7
 We have carefully reviewed those statements as to defendant's health and the further record in the case. Therefrom it appears that defendant did not heed or treat seriously his San Francisco doctor's suggestion of a program of rest and of limiting his activities to his home as treatment for defendant's "peptic ulcer and infectious hepatitis". Instead, he traveled across the United States from San Francisco to the Boston area and from there, in violation of the Court's order not to leave certain stated jurisdictions, he went on a very extensive foreign trip via Montreal, Canada, to Europe and thence to four different nations on the west and east sides of South America.
 
 
 8
 Defendant was an astute business man and made enormous profits in the wrongful sales of the fifteen vessels here involved. His asserted unfamiliarity with and fear of American court proceedings are not factually or legally justifiable excuses for his refusal to submit to the Trial Court's orders and authority. If that were not so, no litigant who merely feared the outcome of his lawsuit would be required against his own will to submit or continue to submit to any court's authority. Every litigant is bound to submit to the court's lawful jurisdiction.
 
 
 9
 Defendant was represented by able American counsel whose advice was available to him and was on one critical occasion received by him during defendant's long distance telephone call on March 10, 1958 from Argentina to his attorney in Washington, D. C. who then on the basis of the then existing record advised defendant of the likely unfavorable consequences to him of the default motion then set for hearing on March 13, 1958, when it was heard and granted. Undoubtedly his previous personal knowledge of that default hearing had prompted that telephone call to his attorney who at the March 13th default hearing reported to the Court the subject of that call. The Trial Court was amply justified in disbelieving defendant's excuses because obviously they were not made in good faith and were not trustworthy. In fact, the whole course of defendant's conduct conclusively shows his long sustained willful disregard of the Trial Court's orders and his contumacious attitude towards the Court's authority.
 
 
 10
 After entry of judgment in plaintiff's favor pursuant to the trial on the merits on the single issue of damages, the defendant moved for a new trial and with that again asked the Court to set aside the default and reinstate his answer. Both of those requests the Court finally refused for the reasons that "no new circumstances are advanced by defendant which in any way indicate that the order of default was not justified at the time it was entered. Although defendant now * * * represents that he is willing to appear in San Francisco to resume his deposition when his health permits, he has made no showing whatsoever of a meritorious defense which might warrant the exercise of the Court's discretion to set aside the default."
 
 
 11
 The record in this case strongly supports and justifies the action of the Trial Court in striking defendant's answer and entering his default, as being clearly within the proper exercise of the Court's discretion. Defendant's assigned errors numbered 2 and 4, as well as his contentions and objections, respecting the answer-striking and default order are without merit and are all rejected. Upon the facts in this case, that order was specifically authorized by Rule 37(d), F.R.Civ.P., and has the support of authoritative writings and Court decisions. 6 Moore's Federal Practice, Par. 55.10 [2], 2 ed., p. 1833; Jackson v. Heiser, 111 F.2d 310 (9 Cir.); Bourgeois v. El Paso Natural Gas Co., 257 F.2d 807 (2 Cir.); Massa v. Jiffy Products Co., 240 F.2d 702 (9 Cir.).
 
 
 12
 We affirm the Court's rulings as to all things related to the default.
 
 
 13
 Defendant's assigned error 3 is based on defendant's objections to the Trial Court's holding him personally liable for acts alleged in plaintiff's amended complaint as an incident of the order striking his answer and entering his default, and particularly to the Trial Court's finding of an alter ego relation between defendant and each of Asia Development Corporation and Hong Kong Shipping Corporation, Limited, as the result of only the amended complaint's allegation of such relation plus the answer-striking and default order, without any supporting evidence.
 
 
 14
 On that issue our attention is called by plaintiff to the former decision of this Court in Edwards v. United States, 123 F.2d 465 (9 Cir.), which held that, in a criminal proceeding, the mere allegation in effect that one is the alter ego of a corporation is not sufficient to advise the accused of the dominance by and merger of the corporation into an individual. Here in this case, however, the facts of the alter ego relation are much more specifically and adequately set out in plaintiff's amended complaint than they were in the Edwards case, supra. The Trial Court was as a result of the default required at the trial on the issue of damages to accept as true the plaintiff's allegations in substance that the Asia Development Corporation and Hong Kong Shipping Corporation, Limited, were under the complete domination and control of defendant Fong and were merely conduits through which he carried on his individual business. The facts so stated were in plaintiff's amended complaint well pleaded, and in view of the answer-striking and default order, no further supporting evidence was required. That is true even though plaintiff's factual allegations were upon information and belief because they stated facts primarily within defendant's knowledge. 71 C.J.S. Pleading § 82, p. 196. Defendant's assigned error 3 is not well taken and is overruled.
 
 
 15
 The defendant's assigned error number 5 respecting the right of plaintiff to appeal from the Trial Court's disallowance of plaintiff's claim for actual damages under its fourth cause of action is disposed of by our disposition below of plaintiff's related assignment of error on its appeal.
 
 
 16
 Defendant claims as his 6th assigned error the Trial Court's levying execution on defendant's bond and its security, and contends that such action by that Court was wrongfully obtained by misrepresentation by plaintiff's counsel in that after defendant's appeal, plaintiff's counsel represented to the Court that plaintiff then had the right to execution against the bond, but that, defendant argues, plaintiff had no such right because the bond was required and posted only as an incident to the proceedings on the first cause of action under the False Claims Act, and that since the Court awarded to plaintiff no relief on that count, the plaintiff has had no right to any benefits under the bond.
 
 
 17
 After stating that as conditions of the bond, defendant was to appear in Court "* * * in accordance with all notices and with all orders of the Court * *" and that he would "* * * remain within the jurisdiction of the United States District Court for the Northern District of California, or for the Southern District of California, or for the District of Columbia, or for all other districts in the State of New York, * * * unless permission to leave * * * be granted by order of the Court * * *", the bond is further conditioned that "I am to pay any judgment, including interest and costs, which may be entered against me and in favor of the United States", and that "* * * if I fail to perform any one of these conditions, payment of the amount of the bond shall be due forthwith", and further "* * * the security deposited herein is to be applied to payment of any such said judgment, interest and costs, and I consent to the application of said cash bail (later replaced by Government bonds) of Fifty Thousand Dollars in partial satisfaction of any such judgment as may be entered against me." Parenthesis added.
 
 
 18
 We think plaintiff correctly contends that the quoted provisions of the bond show explicit intention on the part of both the Trial Court and the defendant that the bond and its security shall cover any judgment of the Court against the defendant whether on the first cause of action or not. Moreover, plaintiff in order to enforce its judgment in this case, in like manner as in any other case, had the right irrespective of the bond provisions to levy execution on any property of the defendant, including the bond's security, found within the Court's jurisdiction. Rule 62(a), F.R.Civ.P., prohibits execution for 10 days after entry of judgment, but does not provide that pendency of an appeal of itself supersedes the judgment. Nor did defendant's post-judgment motions supersede the judgment. He has taken no action before or since he appealed to supersede the judgment, nor since the issuance of execution has he applied for the Trial Court's correction of an allegedly wrongful order. We think plaintiff's and the Trial Court's actions in levying execution on the defendant's bond and its security were proper, and that there is no merit in defendant's 6th assigned error.
 
 
 19
 On its cross-appeal the plaintiff assigns as error the action of the Trial Court (1) to the extent that its final judgment of February 11, 1959 is in favor of the defendant and against the plaintiff, and (2) in entering the amending order of June 3, 1959 deleting the $511,000.00 item for actual damages from the original judgment of February 11, 1959 in plaintiff's favor, effective 30 days after June 3, 1959, and (3) in conditionally granting on June 3, 1959 the motion to amend the judgment effective 30 days thereafter.
 
 
 20
 Again here in connection with plaintiff's assigned errors and its claim for liquidated and actual damages, the following provisions of the contract should be noted.
 
 
 21
 Section IX(F)3 of the contract provided that the primary consideration for the sale of the vessels was the scrapping of them, as to which time was made of the essence, and that defendant should scrap five of the vessels by March 3, 1950 and each of the remaining ten vessels at one month intervals thereafter. Defendant agreed that if the vessels were not so scrapped he would for each unscrapped vessel pay as liquidated damages $100.00 per day for each day's delay for 180 days following the specified scrapping completion date and for continued failure to scrap thereafter defendant agreed to be deemed in total default and to pay an additional lump sum of $25,000.00.
 
 
 22
 Section IX(F)4 of the contract stipulated that the Maritime Commission might terminate it as to further performance in case of delay in scrapping beyond the 180-day period or in case the defendant should operate or permit the operation of any of the vessels (except upon conditions not here involved). It was also agreed that upon such termination, defendant would thereupon surrender the vessels or any parts of them not scrapped and furnish to the Commission a bill of sale with warranty of title free from liens, and that such termination would not release defendant from payment of the above mentioned liquidated damages.
 
 
 23
 Section IX(H) of the same contract provided that defendant would not sell or assign any of his rights or obligations under the contract without the written consent of the Commission. For violation of this Section, however, the contract did not provide liquidated damages.
 
 
 24
 Defendant took delivery of all of the fifteen vessels at Subic Bay on March 3, 1948. Twelve of them were towed to Shanghai for scrapping, but before that was completed, the defendant removed ten of those twelve to Hong Kong while Communist forces were advancing upon Shanghai, leaving two of those twelve vessels at Shanghai where they had been grounded. Three of those ten vessels removed to Hong Kong were sold unscrapped for $210,000.00. One of those three so sold was returned by the vendee to Shanghai and while two of those three were being towed back to Shanghai by the vendee those two were intercepted by a Communist gunboat. Plaintiff's complaint alleges that one of those two intercepted vessels was ultimately scrapped on March 3, 1952, but the Court was not informed as to the final fate of the other one of those two intercepted vessels. Of the remaining seven of those ten vessels so removed to Hong Kong, four were sold unscrapped by defendant in the period November 15, 1950-February 28, 1951, but those four were ultimately scrapped in Hong Kong during 1951. However, the contract time limit for the last vessel scrapping was January 3, 1951. The remaining three of those seven vessels so removed to Hong Kong were sold unscrapped in January, 1951 and towed by their vendees to Canton, China. The record does not disclose the scrapping of these three vessels at any time. There was no scrapping time extension for any of said twelve vessels.
 
 
 25
 The 181st day after the expiration of the contract scrapping time limit for the first five vessels was August 31, 1950; for the sixth vessel, October 1, 1950; for the seventh, October 31, 1950; for the eighth, December 1, 1950; for the ninth, December 31, 1950; for the tenth, January 31, 1951; for the eleventh, March 3, 1951; and for the twelfth vessel was April 2, 1951.
 
 
 26
 The record discloses that those twelve vessels above mentioned were not scrapped by defendant or for his account within the contract time limits. As to each and all of those vessels, it is not so shown that within that time or the next 181 days thereafter they were scrapped by anyone, and plaintiff asserts as a fact, not denied by defendant, that they were not so scrapped. Upon the substance of the foregoing situation, the Trial Court ruled that "Consequently it is clear that plaintiff is entitled to the full liquidated damages provided by the contract for the delay in scrapping these twelve vessels. These damages total $516,000.00 * *" (computed on the agreed basis of $100.00 per day for each vessel for each day's scrapping delay up to 180 days following expiration of the contract time limit, with an additional flat sum of $25,000.00 per vessel for further delay beyond the 180 days).
 
 
 27
 The Trial Court included that total sum in its judgment in favor of plaintiff, and finally, upon defendant's motion for new trial or for correction of the original judgment of February 11, 1959, rejected defendant's contention in his fourth error assignment that before the entry of that judgment plaintiff waived its claim for liquidated damages, and held that plaintiff had not waived that claim, saying that "* * * an examination of the trial record and the arguments and briefs of counsel as a whole shows beyond question that the claim for liquidated damages was not abandoned." From that action of the Court defendant now appeals, but our review of the record convinces us of the correctness of that quoted statement and of the cognate ruling of the Court, and we approve and affirm that action of the Trial Court and its award of said $516,000.00 as liquidated damages.
 
 
 28
 Of the original 15 vessels, the three remaining at Subic Bay after the above mentioned twelve had been removed were towed to Japan by defendant in 1953 and there sold by him unscrapped with the understanding, however, that they were to be scrapped, and they were there actually scrapped by defendant's vendees in 1953, within the contract time limit as extended by the Maritime Commission. At the trial plaintiff claimed liquidated damages from defendant as to these three vessels on the theory that defendant in selling them unscrapped had made it impossible for him to scrap them and had thereby failed and refused to scrap the vessels himself or to have them scrapped for his account within the specified time. The Court, although agreeing with plaintiff's contention that defendant's sale of the vessels resulted in defendant's failure and refusal to scrap them within the agreed time limit, held nevertheless that, since those three vessels were ultimately scrapped by the vendees within the contract time limit as extended, plaintiff had suffered no liquidated damages respecting them. Hence the Court refused to allow plaintiff's requested award for liquidated damages as to those three vessels. We agree with that conclusion, and to the extent that plaintiff's first assigned error may apply to it, we hold that such error assignment is without merit.
 
 
 29
 As to actual damages, the Trial Court ruled that five of the 13 vessels sold by defendant unscrapped have never been scrapped, and that plaintiff would be entitled under the agreed IX(F)4 provision to terminate the contract and repossess these vessels, but that since defendant's wrongful sale of the vessels made that impossible, plaintiff has thereby been actually damaged to the extent of the value of these five vessels, and found that such value based on the sales price of them received by the defendant totals $511,000.00, for which sum as actual damages in addition to that awarded for liquidated damages the Trial Court on the fourth count awarded judgment to plaintiff in the Court's original judgment of February 11, 1959.
 
 
 30
 As before stated, the Court, however, subsequently on June 3, 1959 granted defendant's alternative motion to delete from the judgment all the $511,000.00 actual damages item because in the fourth count, upon which the judgment was entered, plaintiff did not before the defendant's default demand actual damages and because Rule 54(c), F.R.Civ.P., precludes in default cases judgment different in kind or amount from that demanded before entry of the default. From the order so deleting actual damages, plaintiff now cross-appeals.
 
 
 31
 Rule 54(c), F.R.Civ.P., does specifically provide: "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. * * *".
 
 
 32
 In 6 Moore's Federal Practice, 2 ed., Par. 54.61, pp. 1205-1206, it is said: "Since the prayer limits the relief granted in a judgment by default, the prayer must be sufficiently specific that the court can follow the mandate of the Rule. * * *
 
 
 33
 "Where, however, the defendant appears at the hearing on the application for judgment, the court, in the exercise of a sound discretion, may permit the claimant to amend his prayer for relief", citing, Peitzman v. City of Illmo, 141 F.' 2d 956, 962 (8 Cir., 1944).
 
 
 34
 In that case, however, the United States Court of Appeals for the Eighth Circuit said that "In this connection it should be observed that the record is in a confused condition; it in fact presents a paradox", in that, pre-trial attempts in the Trial Court to effectuate on the record an increase in the demanded amount of the plaintiff's claim pursuant to notice and the court's approval order resulted instead in a decrease by one-half the amount demanded in the complaint before the attempted increase. At the trial, plaintiff moved to again amend the complaint "in the actual damages up to $5,000.00, and to amend the amount of punitive damages to $20,000.00." The Appellate Court at page 962 said that "In this state of the record it is doubtful whether the prayer for punitive damages was in fact increased in amount" since the amount of punitive damages finally stated was the same amount as that stated before any amendments were made.
 
 
 35
 That Appellate Court further stated that "Rule 54(c) apparently is a general rule applicable in case of a non-appearing defendant in complete default. On a hearing on the question of damages, under Rule 55(b) a defendant, though in default, is in court on a hearing limited to the question of the amount of damages, to the same extent that he is in court in a trial on the merits, and we think amendments at the trial are as appropriate in the one case as in the other. Amendments to a pleading may be allowed at the hearing on damages as to the relief prayed, subject to the right of the defendant, if taken by surprise or put to a disadvantage, to ask for a continuance or for time in which to prepare to meet the enlarged claim * * *".
 
 
 36
 As to the above quoted statements from Moore's Fed.Prac., supra, the author did not, and plaintiff for its related contentions did not, cite any court decisions other than Peitzman, supra, — a most notable and significant situation in view of the great mass of cases interpreting the Federal Rules of Civil Procedure decided subsequent to Peitzman, supra.
 
 
 37
 It must be borne in mind that the mandate of the Rule is very simple, clear and decisive that a judgment "shall not be different in kind from or exceed in amount that prayed for in the demand for judgment" in default cases. Peitzman, supra, was not based upon facts like those in this case, in that, the record was in a "confused condition", and was such that "In this state of the record it is doubtful whether the prayer for punitive damages was in fact increased in amount". Very likely the court in that case in accepting the so-called trial amendment ostensibly increasing the amount of demanded damages, thought that all the court did was to put the statement of the damages demand as to amount back in the very same condition of that statement in the pleading before any changes ever were made, as the parties intended, thus correcting an obvious mistake.
 
 
 38
 In view of the foregoing, we conclude that for the reasons stated Peitzman, supra, is distinguishable from this case, and should not control or influence our decision here. Moreover, we are unable to escape the explicit and emphatic mandate of Rule 54(c) which unmistakably commands that upon the facts and circumstances of this case the judgment "shall not be different in kind from or exceed in amount that prayed for in the demand for judgment" at the time of the entry of the default.
 
 
 39
 Plaintiff also bases its asserted right to have retained in its judgment the $511,000.00 actual damages item on the theory that it is entitled to invoke in aid of its deficient fourth count the allegations of the second count of the amended complaint, which according to plaintiff's contention will supply any and all additional facts and statements needed to sufficiently state in the prayer of the fourth count a particular demand for judgment for actual damages. As to that contention, however, the rule is that different causes of action must not only be separately stated, but also that each "must contain in itself sufficient averments to constitute a good cause of action", and that a valid "objection to one count is not" overcome "by an averment in another count". That was the common law rule, and it is the same under modern code pleading systems, with this condition, that allegations of one count may be incorporated by reference into another cause of action in the same complaint. 41 Am.Jur. 365, § 108. Here, however, no count two allegations or damages demands were incorporated in count four.
 
 
 40
 As to that count two, it is completely displaced as if dismissed by the Court's adoption of the fourth count on which to award judgment, which the Court did in harmony with plaintiff's alternative pleading of the several counts as emphasized in plaintiff's written closing statement filed August 13, 1958. The fourth count did not incorporate any statement whatsoever from the second count which plaintiff contends stated a valid cause of action, and from which plaintiff claims the right to borrow and add to count four the needed statement of demand for actual damages to sustain the Court's original award of actual damages on count four, and to support plaintiff's contention that the Trial Court should not have deleted the actual damages item from the original judgment of February 11, 1959.
 
 
 41
 Without such incorporation from count two in the fourth count, and since count two as to each and every part of it has been put out of the case by the Court's rightful use of only the fourth alternative count on which to base its judgment, no statement in count two is available for supplying the omission of actual damages from the statement of the demand for judgment in the fourth count. Whether or not count two states a valid cause of action with sufficient statement of actual damages in the demand for judgment in count two, and since count four does not itself state in its demand for judgment any request for actual damages, we are unable to adopt plaintiff's theory that it may borrow from count two a demand for actual damages to supply the omission of such demand in count four.
 
 
 42
 Plaintiff further argues that by reason of the incorporation in the fourth count of the first count's paragraphs 5 to 19 plaintiff had the right under the contract to repossess the vessels for failure to timely scrap them, and that such right of repossession had been defeated by defendant's wrongful sale of the vessels thereby giving to plaintiff the right to be paid actual damages in addition to liquidated damages. Plaintiff in its brief asserts that at the trial on the issue of damages, defendant was advised in the course of plaintiff's opening statement that it was seeking actual damages as well as liquidated damages under plaintiff's fourth count, and that thereby defendant was notified of that fact. But count one's paragraphs 5 to 19 do not state a demand for judgment in any sum for any kind of damages. To allow plaintiff actual damages on the fourth count in which such damages were not when the default was entered requested in the demand for judgment would be a judgment different in kind and more in amount than "that prayed for in the demand for judgment".
 
 
 43
 We conclude that the Trial Court in its order of June 3, 1959 was right in deleting the item for actual damages from its original judgment, and we affirm the Trial Court's action in doing so. All of plaintiff's assignments of error are overruled.
 
 
 44
 We have examined the record regarding all the assigned errors and the related contentions and arguments of counsel. We find no reversible error in the record and the action of the Trial Court both on the defendant's appeal and the plaintiff's cross-appeal is affirmed.
 
 
 45
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 Now 40 U.S.C.A. § 471 et seq
 
 
 [2]
 Now 40 U.S.C.A. § 489